## GIGLIO v. WOOLLARD.

[88 South. 401, No. 21733.]

EXECUTORS AND ADMINISTRATORS. *Approved sale or lease by administrator valid, though administrator a minor.*

Where a minor has been appointed administrator and has qualified as such and makes a contract of sale and lease of property of the decedent which has been approved by the court, such contract is valid, if fair, or not contaminated by fraud, and cannot be set aside merely because a better contract can be secured, even though the administrator is not legally qualified to be appointed, and has been removed. The acts of a *de facto* administrator approved by the court are valid.

APPEAL from chancery court of Bolivar county.
HON. G. E. WILLIAMS, Chancellor.

*D. E. Beams and Clayton D. Potter,* for appellant.

Suit by P. B. Woollard, administrator of the estate of J. C. Saia, deceased, against C. G. Giglio. Decree for plaintiff, and defendant appeals. Reversed, and petition dismissed.

There is one question in this record and that is whether·
or not the acts of a minor who has been duly appointed by
a court which had jurisdiction over both the person of the
minor and the subject-matter will be set aside after a final
decree has been rendered approving a contract entered into
by such administratrix.

The court held in this case that because the administra-
'trix was a minor that the rent contract made by her for the
estate under letters testamentary issued to her will be de-
clared null and void notwithstanding the fact that she
made the contract in her representative capacity, and up-
on a petition verified by oath and ratified and confirmed
by the chancellor.

It is our contention that the administratrix so long as
she remained such was a *de facto* administratrix and that
acts performed by her under orders of the court are valid
acts and that her contracts entered into were properly
ratified by the court are valid contracts and cannot be set
aside on collateral attack.

The rule is laid down in Cyc. as follows: *"Collateral
Attack.* As a general rule a grant of administration which
is not void, although it may be voidable, is not open to ·
collateral attack either on the ground of irregularity in the
proceedings, a mistake in the character of letters granted
where a proper case for administration existed, that the
grant was premature, or that the person to whom letters
of administration have been granted was not entitled by
priority to administer or lacked the required qualifica-
tions."

In the case of *Kansas City M. B. R. Co.* v. *Whitehead,* 19
So. 705, the supreme court of Alabama said: "The statute
gives the right of action for injuries causing the death of
an employee to the personal representative of the dead man.
We do not think the appointment of a person as such rep-
resentative made by the probate court can be attacked in
the action for damages on the ground that he was not en-
titled to administer because of his minority, and that, so
long as his appointment stands, so long as he is in fact

such administrator he is entitled to maintain the suit, whether he is twenty-one years of age or not."

The appointment of an administrator of an intestate estate by a probate court cannot be collaterally attacked. *Griffith* v. *Frazier,* 8 Cranch. 9, 3 Law Edition, 471. "If a court grant administration where there is an executor who has not qualified, its acts, though erroneous, are valid until repealed. *Griffith* v. *Frazier, supra.*

We think in-so-far as the fact that the appointment of an administrator cannot be collaterally attacked is a foreclosed question in our state where the court making the appointment has jurisdiction over both the parties and the subject-matter.

In the case of *Ames* v. *Williams,* 76 Miss. 760, the supreme court held that: "In minors business, just as in matters of general equity, the chancery court exercises a jurisdiction conferred by the constitution—a general jurisdiction—and its records need not show the facts authorizing the exercise of such jurisdiction in a particular case."

And further that: "Its decree appointing the guardian cannot be collaterally attacked by showing that the minor did not live within the county where the court was held, and this although the record is silent as to the residence of the minor."

And the court in that case called attention to the case of *Bolton* v. *Schriver,* 18 L.,R. A. 242, and the notes thereunder. It is true that the Mississippi case above referred to and the *Bolton* v. *Schriver case, supra,* are both cases having to do with the incompetency because the office of administrator was filed by one not residing in the proper county, but in any case of incompetency the rule is the same. The principle which we contend for is recognized as established law in Ruling Case Law, Paragraph 84, of 11 R. C. L.

Mrs. Saia as long as she acted as such administratrix, having been appointed by a court of general jurisdiction, having jurisdiction both of the subject-matter and the per-

son became at least notwithstanding her ineligibility for the office of administratrix a *de facto* administratrix, and as long as her acts were properly approved by the chancery court as in this case, such acts cannot be questioned collaterally. A minor can even be a *de facto* public officer, and if a minor can be a *de facto* officer there is no reason why a minor cannot be a *de facto* administrator. *Wimberly* v. *Boland,* 72 Miss. 243; Throop on Public Officers, ch. 27; 5 Am. & Eng. Enc. L., Title De Facto Officers.

If the court will turn to the subject Executors and Administrators, sub-section 29, Decennial Digest, the corresponding subject in Century Digest, and to the same subject in the subsequent number of the American Digest any number of cases are digested, and in every instance it is held that an order appointing an administrator cannot be attacked collaterally, but as stated above, the same rule would apply to administrators as to guardians, and it has been held that an order appointing a guardian cannot be attacked collaterally. *Peyton* v. *Peyton,* 68 Pac. 757, 28 Wash. 278; *Kalb* v. *German Savings and Loan Society,* 65 Pac. 650, 25 Wash. 349, 87 Am. St. Rep. 757. Words and Phrases, citing many cases on page 1249, Volume 2; *M. K. & T. R. R. Co.* v. *McWherter,* — Kansas —, 53 Pac. 137.

In the case of *Davis* v. *Miller,* 17 So. 323, the supreme court of Alabama held that: "Where a minor, who has been granted letters of administration, after reaching her majority, ratifies her appointment her bond, and all acts done in her representative capacity during her minority, it is proper to refuse to revoke her letters."

We submit that the bill in this case to set aside this contract after the complainant had received the benefits thereof is without equity, and every consideration of precedent and underlying principles of both law and equity call for a reversal of the decree rendered in this case setting aside the contract.

*Somerville & Somerville,* for appellee.

In the court below, we cited and relied upon the case of *Townsend* v. *Tallant,* 33 Calif. 45, 91 Amer. Dec. page 617. In this case, we have a decision from the California court under a statute similar to our statute, where it was held that the sale of real estate was void because a minor was not represented in the court procedure where the land was sold. In the California case, the executor of the estate was *sui juris,* and he was also a guardian for the minor in question. It was urged upon the court that as the executor signed the petition asking for the sale of the property, that as he was also the guardian for the infant, that this petition was binding upon him as guardian for the infant, and thus binding upon the infant.

The court held otherwise, however, holding that the special guardian *ad litem* or next friend would have to represent the infant in that procedure, under their statute, and that any sale made without a strict compliance with the statute was absolutely void and subject to attack anywhere.

We also call the special attention of the court to the notes in 91 Amer. Dec. at the end of the decision just alluded to. The editors have there collated a number of decisions and referred to other notes found in the American Decision and it is of particular significance to us, and we believe it will be to the court, that there is no divergence of opinion or authority on this subject. It seems to have been held without question at any time prior to this that a sale or lease of real estate belonging to a minor is void, unless that minor is properly before the court and the interest of the minor is properly represented at the hearing.

We have read with considerable interest the exhaustive brief of our esteemed adversaries with reference to the binding force of a decree of the chancery court when collaterally attacked. We have this to say in reply, that the decree in question was not attacked collaterally for two rea-

sons. In the first place, this is an estate matter, and our understanding is that the chancery court has plenary supervision over all estate matters from the time the estate is first opened until the final discharge is granted to the party handling the estate. We, therefore, think that any order entered by the chancery court permitting an executor or an administratrix to do, or not to do a given thing, is subject to reversal or recall by the chancery court at any time when this case is still pending. This has been our practice in this section of the state for many years. It will be noted that Gigleo was no party to the original petition signed by Mrs. C. M. Saia, nor was he ever a party to this record until he was dragged into court by us last summer. In the next place, we insist that this is not a collateral attack upon the decree of Judge MAY shown at page 11 of the record, because this is a direct proceeding, in the same cause wherein the decree was originally given for the purpose of vacating that very decree. True it is that P. B. Woollard was appointed administrator sometime before it was sought to set aside this lease, and if that was to be taken as an indirect attack on the lease, then it might be said to be a collateral attack. However, the decree removing Mrs. Saia is merely a step on the part of the court toward straightening out the record, the effect of which was to set aside the order appointing Mrs. Saia as administratrix; the latter and further petition was filed by Mr. Woollard for the purpose of cancelling the order or decree authorizing the lease. This, we think, is an entirely direct proceeding.

We submit the matter most respectfully for the consideration and determination of the court.

ETHRIDGE, J., delivered the opinion of the court.

On the 13th day of November, 1918, Mrs. M. C. Saia filed a petition in the chancery court for letters of administration upon the estate of J. C. Saia, alleging that he died intestate on the 15th day of October, 1918, and that petition-

er was the only heir of the deceased, being his wife and only heir at law, alleging that deceased owned a house valued at four thousand, five hundred dollars, which was encumbered to the extent of four thousand dollars, and personal property consisting mainly of groceries and fixtures amounting to one thousand, two hundred fifty dollars, and praying to be appointed administrator of said estate. Letters of administration were granted by the clerk on the 14th day of December, 1918, which act of the clerk was approved by the court at the next sitting thereof. On the 2d day of January, 1919, the administrator, Mrs. Saia, filed a petition in the court asking the approval of the sale of the stock of goods and fixtures and for a contract of lease for five years of the storehouse, said house to be leased at thirty-five dollars per month, which petition was approved and allowed by the chancellor in vacation on the 12th day of January, 1919. Subsequently Mrs. Saia was removed as administrator, and the appellee, Woollard, was appointed administrator in her stead. And on the 29th day of April, 1920, Woollard and certain creditors of the said J. C. Saia filed a petition in the chancery court setting forth the foregoing proceedings and averring that the order allowing the said sale was improvidently and improperly presented to the court, and that the same was signed by the then chancellor without due regard for the best interest of the estate of the deceased, in that the said order was signed by the chancellor without any evidence being produced and on the assumption that the making of the lease contract therein referred to was for the best interest of the estate. It was further alleged that the making of the lease for five years at thirty-five dollars per month is not for the best interest of the estate; that the said building should now be drawing sixty-five dollars per month and would probably rent for seventy-five dollars per month at the time of the filing of this last petition; and that it was for the best interest of the estate to revoke and cancel the previous order of this court and permit the present ad-

ministrator to make proper contract for renting said property.

It is further alleged that the contract of the rental is void because Mrs. Saia, the administratrix, was at the time a minor and had no right or authority to make this or any contract, that she was approximately seventeen years of age at the time, and prayed for an order authorizing the petitioner to file any suit or take any further step necessary for canceling said lease, and praying for general relief.

The court first entered a decree granting the prayer of this petition without having made Giglio a party. This decree was entered on the 17th day of May, 1920. Thereafter, on the 22d day of June, an order was entered directing the cause to be continued and service to be had upon Giglio to appear on the 29th of June, 1920, to show cause why the order should not be made final, and why his contractual right should not be set aside and canceled. Giglio appeared and moved to strike the order of May 17th from the files because the court was without power or authority to make and enter said order; second, that the order authorizing the lease made January 12, 1919, was a final order.

There was also a petition filed setting forth the order of May 17th and denying the allegations of the petition upon which said order was made and setting forth that the said lease contract was approved by the chancery court, and that the price paid therefor was the best that could be obtained at that time, that the said contract with Mrs. Saia was made in good faith and was a fair and reasonable price at the time, and prayed for the cancellation of the order of May 17th and asking for the reinstatement of the original order approving the contract..

The petition last named was supported by affidavits of a number of people stating that the price paid for the rental of the property was a fair price at the time the contract was made.

The cause was taken under advisement, and on the 27th day of September, 1920, a decree was rendered granting

the relief prayed for in the petition of Woollard, the administrator. This decree was based upon the theory that Mrs. Saia at the time of making the contract was a minor and incapable of making the contract, as shown by the following paragraph of the decree:

"That the said lease contract now held by the said C. Giglio be, and the same is hereby, canceled and for naught held, said contract having been heretofore entered into by M. C. Saia, who was at the time a minor, pursuant to a decree of the chancery court aforesaid entered January 12, 1919, and a part of this record, which decree of this court is declared to be void and of no effect, no person of legal age having been before the court at or about the time of the entering of the said decree, and all of the heirs of the deceased J. C. Saia being not of legal age and being not represented before the court either in person or by guardian or next friend."

The proof taken on the behalf of Woollard, the administrator, shows merely that the property was worth more than thirty-five dollars per month rent at the time it was made, and that it would then (at the hearing) bring from sixty dollars to seventy dollars per month. The entire petition for the sale of the goods and the lease of the store is not attacked, and no effort is made to disturb the sale of goods, and no effort is made to show that there was any fraud in the proceeding nor was there any proof that J. C. Saia left any heirs other than his wife, who administered on said estate. On the hearing it appeared that Mrs. Saia was only eighteen years of age, and that her father applied to be made a party to the petition, which was allowed by the chancellor, though his name was not inserted as a party in the petition. It appears that the contract was made in good faith by Giglio, and that he gave up a position as railroad employee at Vicksburgh to move to Shaw, Miss., and take charge of said stock of goods and storehouse, and he had been in possession of and conducting the business for more than twelve months carrying out said contract.

We think the chancellor was in error in entering a decree to set aside this rent contract. The chancery court has jurisdiction both of the administration of estates and of minor's business, and it appears that Mrs. Saia is the only heir of J. C. Saia, and she was before the court as administratrix, and the court had jurisdiction and power to authorize the contract made. The fact that Mrs. Saia was under the age which would authorize her to become administratrix does not avoid a contract made with the sanction of the court. The leasing of property of the estate of deceased persons is often an important factor in administering the estate to the best advantage. A contract making such lease when approved by the court is valid and binding, and cannot be avoided except as any other contract may be. Few people would care to enter a lease contract if at any time the court could set aside the contract because the lessee had obtained a bargain in the securing of said contract. The lessee would have to bear the loss if the contract should prove unprofitable and should be allowed to gain if it proved profitable. The proof in the case does not amount to a fraud or unfairness. The reasonableness of rentals at the time is, when considered most favorable to the appellee, a matter about which reasonable business men differ. This does not authorize the rescission of the contract. The appointment of an administrator who has not the necessary qualification is not absolutely void, but only voidable, and the acts of the *de facto* administrator acting under an appointment of the court is valid to the same extent as the act of a qualified administrator. He is subject to removal, but acts performed between the appointment and the removal are valid, unless they are subject to attack for some matter which would defeat the act of said administrator if he were qualified lawfully to act. *Davis* v. *Miller,* 106 Ala. 154, 17 So. 323; *M., K. & T. R. R. Co.* v. *McWherter,* 59 Kan. 345, 53 Pac. 137; *Wimberly* v. *Boland,* 72 Miss. 243, 16 So. 905.

The decree will be reversed, and the petition dismissed.

*Reversed and petition dismissed.*